Complainant and defendant John Charley were partners in the real estate business and organized a corporation, J. C. Realty Company, to conduct this business. They were equal owners of the stock. They also prior to 1930, as partners, bought and sold stocks through a brokerage account. Besides complainant was a druggist, and was in the business of selling scales. In 1929 the corporation sold some of its property, consisting of adjoining stores to the C. D. Baking Company for $483,500. By March 27th, 1931, title was in Lyric Holding Company. There was a first mortgage to the Prudential *Page 74 
Insurance Company and J. C. Realty Company held a second mortgage in the amount of $300,000. It is this second mortgage and the transactions that grew out of it that form the subject of this suit. Complainant contends that an assignment of his half of the stock in J. C. Realty Company made by him to John Charney was only as security for money due his associate and that he is still entitled to redeem it, and to follow the proceeds of the corporation asset, the mortgage, which ultimately resulted in title to the property in the Lane Realty Company, which is in the hands of Charney and his wife. He asks an accounting of the proceeds of the mortgage, and the profits from it and the later ownership of the property, and that he be given a half interest therein subject to the payment of what is due John Charney.
In July, 1931, the year after the stock transfer, complainant consented to and participated in the assignment of the mortgage in question to John Charney, but he claims this was only for further security to his associate, and was not a surrender of his rights. This assignment was without any consideration received by the J. C. Realty Company. In 1933 Charney assigned the mortgage to his wife who foreclosed in 1935, and on acquiring title the Lane Realty Company was organized. This company is owned by Mrs. Charney, who complainant contends merely stands in the shoes of her husband.
Defendants contend that by July of 1931, complainant had relinquished all claim to the stock and mortgage by surrender of his rights, in consideration of John Charney's cancellation of complainant's very heavy indebtedness to him.
There is a sharp conflict in the testimony as to the facts, both as to the nature of the transactions between the parties and the extent of complainant's indebtedness. The men had been associated in the real estate business since 1911 and not only did they play the stock market together, but John Charney participated to the extent of advancing funds in the scale business and in a chattel mortgage of complainant in the sale of a drug store. In view of the long and close association it was natural that no very definite records were kept of the multiplicity of transactions between them. *Page 75 
Almost innumerable checks and notes passed back and forth in the course of the years, aggregating at least $200,000, with nothing of record to show what they were for. The wide discrepancy is illustrated by the statement of complainant that he owed his partner $38,000 in 1931, while Charney claims it was around $150,000.
But such corroboration as there is points to the validity of complainant's claim that he did not relinquish his interest in the corporation, but merely turned it over as security. The assignment of the stock in 1930 was evidenced by a written contract, which expressly states that it was as security. There is no record and in fact no testimony that there was any formal change in this status. Defendants contend that complainant was completely out of the corporation in 1931. Yet Charney reported in 1933 in an income tax return that complainant received a salary from the J. C. Company. As late as 1937 complainant and Charney were signing notes together as officers of the corporation. In 1933 complainant assigned to Charney a chattel mortgage received by complainant on the sale of a drug store. He signed a long series of notes to Charney on which he ultimately paid almost $4,000 up to 1943. Charney does not explain this transaction nor claim he paid anything for the notes or mortgage, while complainant says it was additional security on his debt.
Complainant produced at the hearing two forms of proposed agreements dated in 1936, which he says were presented to him on behalf of defendants, and which he refused to sign because he still claimed an interest in the J. C. Realty Company. These documents would have acknowledged that complainant had no further claim on the J. C. Realty Company or on the property of Lane Realty Company in consideration of the release of complainant from liability on a note of his to John Charney in the amount of $38,000. Defendants disclaim all knowledge of these documents or of the submission of any proposal of settlement of claims at this time. But they are persuasive of the existence of negotiations long after defendants contend all matters were concluded between the parties.
I have therefore concluded that complainant has established *Page 76 
his basic claim that he retained an interest in the stock of J. 
C. Realty Company, that the stock was given only as security, as was the mortgage, and that these assets can be followed into the hands of the defendants. An accounting will be ordered in accordance with the prayer of the bill to trace all the transactions of the parties, both as to the balances due from complainant to John Charney and the proceeds of the mortgage and the realty resulting therefrom in the hands of the Lane Realty Company.